IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HE NAM YOU and KYUNG SOON KIM, for themselves and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>JAPAN; HIROHITO; AKIHITO; NOBUSKE KISHI; SHINZO ABE; NYK LINE (NORTH AMERICA); NIPPON YUSEN KABUSHIKI KAISHA; NISSAN MOTOR CO., LTD.; NISSAN NORTH AMERICA, INC.; TOYOTA MOTOR CORPORATION; TOYOTA MOTOR SALES, U.S.A., INC.; HITACHI, LTD.; HITACHI AMERICA, LTD.; NIPPON STEEL & SUMITOMO METAL U.S.A., INC.; NIPPON STEEL & SUMITOMO METAL CORPORATION; MITSUBISHI CORPORATION (AMERICA); MITSUBISHI GROUP; MITSUI & CO. (U.S.A.), INC.; MITSUI & CO. LTD.; OKAMOTO INDUSTRIES, INC.; SANKEI SHIMBUN, CO., LTD.; and DOES 1–1000, inclusive,<br><br>    Defendants. | No. C 15-03257 WHA<br><br>**ORDER GRANTING DEFENDANT MITSUI & CO. (U.S.A.), INC.'S MOTION TO DISMISS** |

**INTRODUCTION**

In this putative class action for personal injury and crimes against humanity during the Second World War, one of twenty defendants moves to dismiss all claims against it. For the reasons stated below, defendant's motion is **GRANTED**.

**STATEMENT**

Plaintiffs He Nam You and Kyung Soon Kim are residents and citizens of the Republic of Korea. Plaintiffs allege that they were abducted by the Japanese government during the

Second World War, forced into servitude, and exploited as sex slaves for the benefit of Japanese soldiers at "comfort stations" in Japan.

Plaintiffs bring claims against five overlapping categories of defendants, which they refer to as "wartime defendants," "corporation defendants," "headquarter defendants," "subsidiary defendants," and "individual defendants." Defendant Mitsui & Co. (U.S.A.), Inc., is identified as a member of the wartime, corporation, and subsidiary categories. Mitsui & Co. (U.S.A.) is a subsidiary of defendant Mitsui & Co., Ltd., which is based in Japan. The parent company has not yet been served.

Plaintiffs allege that "MITSUI" (without specifying which Mitsui entity), realized "huge profits" from the manufacture and sale of trains and vessels to the Japanese government for use by the military during the Second World War for various purposes, including the transportation of plaintiffs to comfort stations where they were forced into servitude and sexually abused (Amd. Compl. ¶ 47). Plaintiffs also allege that defendants Shinzo Abe (the Prime Minister of Japan) and Sankei Shimbun, Co., Ltd. (a Japanese newspaper) recently engaged in a campaign to spread assertions that the comfort women used by the Japanese military served as "voluntary prostitutes" (Amd. Compl. ¶ 177).

Plaintiffs assert the following claims against Mitsui & Co. (U.S.A.):  (1) crimes against humanity in violation of the Alien Torts Statute, (2) cruel, inhuman, or degrading treatment in violation of the Alien Torts Statute, (3) conspiracy to commit crimes against humanity in violation of the Alien Torts Statute, (4) aiding and abetting torture, in violation of the Torture Victim Protection Act of 1991, (5) intentional infliction of emotional distress, (6) battery, and (7) violation of the Racketeer Influenced and Corrupt Organizations Act. Mitsui & Co. (U.S.A.) moves to dismiss all claims against it.[1] This order follows full briefing and oral argument.

---

[1] Six other defendants (five corporations based in the United States and the Japanese newspaper, Sankei Shimbun) have been served. Sankei Shimbun's motion to dismiss is scheduled for a hearing on November 19. Plaintiffs and the remaining five manufacturers have stipulated that any responses to the complaint will not be due until several weeks after this motion is resolved.

**ANALYSIS**

Mitsui & Co. (U.S.A.) argues that plaintiffs' amended complaint suffers from numerous fatal deficiencies. Specifically, it contends that the allegations that give rise to plaintiffs' claims against Mitsui & Co. (U.S.A.) all occurred overseas more than seventy years ago and that plaintiffs' claims are subject to a waiver in the 1965 Treaty between Japan and the Republic of Korea. The gravity of the injuries that plaintiffs allegedly suffered cannot rescue their claims, inasmuch as they present a non-justiciable question and are barred by the relevant statutes of limitations. Before discussing those issues, this order addresses Mitsui & Co. (U.S.A.)'s argument regarding the extraterritorial reach of the bases for plaintiffs' claims.

### 1. EXTRATERRITORIAL APPLICATION.

Each allegation that gives rise to plaintiffs' claims against Mitsui & Co. (U.S.A.) occurred overseas. "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010). Plaintiffs' RICO claims and their state law claims do not include any indication of extraterritorial application. *See United States v. Chao Fan Xu*, 706 F.3d 965, 974–75 (9th Cir. 2013) ("RICO does not apply extraterritorially."); *Diamond Multimedia System v. Superior Court*, 19 Cal. 4th 1036, 1059 n.20 (1999) (presumption against extraterritorial reach of state law claims, absent clear indication otherwise).

Although the Torture Victim Prevention Act does explicitly apply to some extraterritorial conduct, plaintiffs' claim against Mitsui & Co. (U.S.A.) on that basis must fail because only a natural person can be liable under that act. *Mohamad v. Palestinian Authority*, 566 U.S. ___, 132 S. Ct. 1702, 1708 (2012).

Plaintiffs also assert three claims under the Alien Torts Statute, which is a jurisdictional statute that "allows federal courts to recognize certain causes of action based on sufficiently definite norms of international law." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. ___, 133 S. Ct. 1659, 1664 (2013). The Supreme Court has held that the Alien Torts Statute cannot reach foreign conduct except where plaintiffs' "claims touch and concern the territory of the

1  United States . . . with sufficient force to displace the presumption against extraterritorial
2  application." *Id.* at 1669.

3  During the Second World War, Japan attacked the territories of the United States at Pearl
4  Harbor, Guam, Wake Island, and Philippines. The alleged atrocities that give rise to plaintiffs'
5  claims were part and parcel of the Japanese war effort. This order finds that nexus between
6  plaintiffs' claims and the territory of the United States is sufficient to satisfy the requirements
7  of *Kiobel* on a Rule 12(b)(6) motion.

8  Nevertheless, plaintiffs' claims must be dismissed because they present a non-justiciable
9  question, and they are time-barred, as now discussed.

10  **2.   NON-JUSTICIABLE POLITICAL QUESTION.**

11  Defendants argue that plaintiffs' claims present a non-justiciable political question and
12  therefore must be dismissed. A case presents a non-justiciable political question if it "revolve[s]
13  around policy choices and value determinations constitutionally committed for resolution to the
14  halls of Congress or the confines of the Executive Branch." *Japan Whaling Association v.*
15  *American Cetacean Society*, 478 U.S. 221, 230 (1986).

16  In 1951, Japan entered into a treaty of peace with the Allied Powers. 3 U.S.T. 3169,
17  TIAS No. 2490 (1951). Article 14 of the 1951 Treaty required Japan to pay certain reparations
18  to the Allied Powers "for the damage and suffering caused by it during the war." Additionally,
19  the 1951 Treaty included a waiver of all "claims of the Allied Powers and their nationals arising
20  out of any actions taken by Japan and its nationals in the course of the prosecution of the war."
21  Article 26 of the 1951 Treaty obligated Japan to enter into "bilateral" treaties with non-Allied
22  states "on the same or substantially the same terms as are provided for in the present treaty."
23  In 1965, Japan entered into a treaty with the Republic of Korea. Section 1 of Article II of the
24  1965 Treaty "settled completely and finally" all claims between the parties and their nationals,
25  including those addressed in the 1951 Treaty. 583 U.N.T.S. 258, 260 (1965).

26  In *Joo v. Japan*, 413 F.3d 45 (D.C. Cir. 2005), citizens of Korea, among others, brought
27  claims against Japan based on allegations that they were kept as comfort women for Japanese
28  soldiers during the Second World War, similar to our plaintiffs. The D.C. Circuit dismissed the

4

case as it presented a non-justiciable political question. There, the plaintiffs argued that the 1951 Treaty with Japan only waived claims by *Americans* against Japan and its nationals, not claims by citizens of other non-party nations. They also argued that the Republic of Korea believed its citizens' claims against Japan and its nationals survived the 1965 Treaty.

The United States submitted a statement of interest in *Joo*, noting that "it manifestly was not the intent of the President and Congress to preclude Americans from bringing their war-related claims against Japan . . . while allowing federal or state courts to serve as a venue for the litigation of similar claims by non-U.S. nationals." *Id.* at 50 (citing Statement of Interest of the United States at 28). Additionally, the decision in *Joo* noted that Article 26 of the Treaty made it "pellucidly clear" that the United States intended the claims of citizens of other nations to be resolved in bilateral treaties, not by domestic courts.

Courts have the authority to construe treaties. *Japan Whaling*, 478 U.S. at 230. Moreover, the mere fact that a case presents an issue of foreign relations does not render it non-justiciable. *Baker v. Carr*, 369 U.S. 185, 210 (1962). Nevertheless, in light of the statement of interest submitted by the United States, the court in *Joo* held as follows:

> [A]djudication by a domestic court not only "would undo" a settled foreign policy of state-to-state negotiation with Japan, but also could disrupt Japan's "delicate" relations with China and Korea, thereby creating "serious implications for stability in the region."

*Id.* at 52 (quoting Statement of Interest at 34–35). Ultimately, because the plaintiffs' claims would have required the *Joo* court to resolve competing interpretations of a treaty between Korea and Japan, the case was dismissed as a non-justiciable political question.

Although Mitsui & Co. (U.S.A.) is an American entity, plaintiffs' claims are based on the theory that it is an alter ego of its parent company, Mitsui & Co. Ltd., a Japanese corporation. Even if plaintiffs could establish that Mitsui & Co. (U.S.A.) can be liable for the torts of its parent, that begs the question whether those claims (against the parent) were extinguished by the 1965 Treaty between Japan and Korea. That was exactly the question resolved in *Joo*.

Plaintiffs do not meaningfully rebut this argument in their response. They do not address *Joo* in their brief at all, although Mitsui & Co. (U.S.A.) devoted three pages to it in its opening

1 brief. Instead, plaintiffs contend that human rights violations do not always present political
2 questions. Plaintiffs do not address the specific political concerns here.

3 Although *Joo* is not binding in our circuit, it is the only appellate authority on point,
4 and this order adopts its thorough reasoning, which was informed by the position of the
5 United States. Accordingly, plaintiffs' claims against Mitsui & Co. (U.S.A.) must be dismissed,
6 inasmuch as they present a non-justiciable political question. Nevertheless, an additional
7 infirmity in plaintiffs' complaint is worth addressing.

### 3. PLAINTIFFS' CLAIMS ARE TIME-BARRED.

In the 1965 Treaty, Japan agreed to pay reparations to the Republic of Korea in the form of $300 million in grants of supplies and services to the Republic of Korea and various loans totaling $500 million. In 1993, Japan's then-Chief Cabinet Secretary Yohei Kono issued a formal apology for the role of the Japanese government in the coercive recruitment of comfort women. In 1995, the Japanese government established the Asian Women's Fund, which issued formal written apologies and paid reparations to comfort women. Next month, the heads of both Japan and Korea are scheduled to meet at a summit, where it is expected they will discuss further efforts to address the atrocities committed against comfort women.

Each allegation that gives rise to plaintiffs' claims against Mitsui & Co. (U.S.A.), including those against the unspecified Mitsui entity and those against the groups of defendants that include Mitsui & Co. (U.S.A.), occurred more than seventy years ago. The longest limitations period on any of plaintiffs' claims is ten years, under the Alien Torts Statute. *See Deutsch v. Turner Corp.*, 324 F.3d 692, 716–17 (9th Cir. 2003). Plaintiffs contend that RICO has no limitations period. The statute itself does not provide a time bar, but the Supreme Court explicitly held that the limitations period in civil RICO cases is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). Plaintiffs argue that equitable estoppel and equitable tolling allow them to circumvent any time bar on their claims against Mitsui & Co. (U.S.A.). That argument is unavailing.

"Equitable estoppel, also termed fraudulent concealment, halts the statute of limitations when there is 'active conduct by a defendant, above and beyond the wrongdoing upon which

6

the plaintiff's claim is filed to prevent the plaintiff from suing in time.' The plaintiff must demonstrate that he relied on the defendant's misconduct in failing to file in a timely manner . . . ." *Guerrero v. Gates*, 442 F.3d 697, 706–07 (9th Cir. 2003). Plaintiffs' only allegation relating to fraudulent concealment is that "Defendants including Defendant JAPAN have purposefully and intentionally concealed or manipulated the evidence showing direct control and involvement of the Japanese Government" (Amd. Compl. ¶ 89). That conclusory allegation is not entitled to a presumption of truth on a motion to dismiss and therefore cannot establish fraudulent concealment. Moreover, the Japanese government's admission of its role in the recruitment of comfort women occurred in 1993, still more than a decade beyond the limitations period for any of plaintiffs' claims against Mitsui & Co. (U.S.A.) (Amd. Compl. ¶ 213)

Plaintiffs also allege they are entitled to equitable tolling. "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999), *as amended* (Mar. 22, 1999). Plaintiffs contend in their brief on this motion (but not in their complaint) that "Defendant Mitsui has never admitted any wrongdoing against Plaintiffs. Moreover, Defendant Mitsui consistently refused to provide any evidence under its control to Plaintiffs" (Pl.'s Opp. at 15–16). They have not alleged any basis from which to infer that the denial of liability and the failure to produce evidence prior to discovery was wrongful, much less that it prevented plaintiffs from timely asserting their claims.

At oral argument, plaintiffs cited *Holocaust Victims of Bank Theft v. Magyar Nemzeti Bank*, 807 F. Supp. 2d 689, 696 (N.D. Ill. 2011) (Judge Samuel Der-Yeghiayan), *vacated on other grounds*, *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661 (7th Cir. 2012), for the proposition that the atrocities of the Second World War constituted extraordinary circumstances sufficient to warrant the application of equitable tolling. In *Holocaust Victims*, a group of Hungarian Jews and their next of kin brought claims against financial institutions based on the expropriation of assets from victims of the Holocaust. That decision held that the plaintiffs

7

raised a dispute of fact regarding equitable tolling without discussing the details of that dispute. Plaintiffs' briefs on that motion relied heavily on *Bodner v. Banque Paribas*, 114 F. Supp. 2d 117 (E.D.N.Y. 2000), which is more instructive, although it ultimately does not apply here.

In *Bodner*, the descendants of a group of Jewish customers of French financial institutions asserted claims based on the expropriation of funds during Nazi occupation of France. The defendants moved to dismiss, invoking the applicable statutes of limitations. The plaintiffs responded that the defendants had engaged in a policy of "systematic and historical denial and misrepresentation concerning the custody of the looted assets" and that it was "impossible for [the plaintiffs] to learn which of the banks was in the possession of their assets, absent cooperation from the defendants." *Id.* at 135. *Bodner* held that equitable tolling applied due to "deceitful practices by the defendants which have kept them from knowing or proving the extent of these claims." *Id.* at 136.

By contrast, our plaintiffs' allegations (that Mitsui & Co. (U.S.A.) never admitted liability and that the Japanese government did not admit its role in recruiting comfort women until 1993) cannot support equitable tolling. Unlike the plaintiffs in *Bodner*, who could not identify the proper defendants because the defendants had concealed information about the location of allegedly-expropriated funds, nothing has prevented our plaintiffs from knowing or proving the extent of their injuries within the limitations period.

Plaintiffs note that they have alleged claims against Prime Minister Abe and the newspaper, Sankei Shimbun, which involve ongoing conduct, namely, defamatory statements about the history of comfort women. But plaintiffs do not allege that Mitsui & Co. (U.S.A.), or any Mitsui entity, contributed to those injuries. Plaintiffs' defamation claims have no bearing on the limitations period for their claims against Mitsui & Co. (U.S.A.).

Even if plaintiffs could amend their complaint to allege facts somehow explaining their delay in asserting claims against Mitsui & Co. (U.S.A.) within the limitations period, plaintiffs must also amend their claims to avoid the non-justiciable political question discussed above.

**CONCLUSION**

For the reasons stated above, plaintiffs' claims against Mitsui & Co. (U.S.A.) are hereby **DISMISSED**. Plaintiffs may seek leave to amend their complaint and shall have **TWENTY-ONE CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day calendar, for leave to amend the complaint. If no motion is received by this deadline, all claims against Mitsui & Co. (U.S.A.) will be dismissed. Counsel for plaintiffs should plead their best case for all arguments raised in Mitsui & Co. (U.S.A.)'s motion to dismiss, not just those addressed in this order.

**IT IS SO ORDERED.**

Dated: November 3, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE