United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HE NAM YOU and KYUNG SOON KIM, for themselves and on behalf of all others similarly situated,

    Plaintiffs,

v.

JAPAN; HIROHITO; AKIHITO; NOBUSKE KISHI; SHINZO ABE; NYK LINE (NORTH AMERICA); NIPPON YUSEN KABUSHIKI KAISHA; NISSAN MOTOR CO., LTD.; NISSAN NORTH AMERICA, INC.; TOYOTA MOTOR CORPORATION; TOYOTA MOTOR SALES, U.S.A., INC.; HITACHI, LTD.; HITACHI AMERICA, LTD.; NIPPON STEEL & SUMITOMO METAL U.S.A., INC.; NIPPON STEEL & SUMITOMO METAL CORPORATION; MITSUBISHI CORPORATION (AMERICA); MITSUBISHI GROUP; MITSUI & CO. (U.S.A.), INC.; MITSUI & CO. LTD.; OKAMOTO INDUSTRIES, INC.; SANKEI SHIMBUN, CO., LTD.; and DOES 1–1000, inclusive,

    Defendants.

No. C 15-03257 WHA

**ORDER GRANTING DEFENDANT SANKEI SHIMBUN, CO., LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**INTRODUCTION**

In this putative class action for crimes against humanity during the Second World War and for defamation, one of twenty defendants moves to dismiss all claims against it. For the reasons stated below, defendant's motion is **GRANTED**.

**STATEMENT**

Plaintiffs He Nam You and Kyung Soon Kim are residents and citizens of the Republic of Korea. They were abducted by the Japanese government during the Second World War, forced into servitude, and exploited as sex slaves for the benefit of Japanese soldiers at "comfort stations" in Japan. The Japanese military forced over 200,000 Korean women to serve as sex slaves during the Second World War, few of whom survive today.

Defendant Sankei Shimbun, Co., Ltd., is a Japanese corporation with its principal place of business in Tokyo and major offices in Osaka. Sankei employs six reporters in the United States who work as affiliates of news bureaus located here, including one in California. Sankei publishes its newspaper only in Japanese with the exception of one article about proposed amendments to the Japanese Constitution (unrelated to comfort women), which it published in English. Although Sankei does not, itself, conduct any sales or solicitation in the United States, an independent third-party subscription service (OCS) sells a total of twenty-one subscriptions to Sankei's newspaper in the United States, including four in California. Additionally, Sankei offers a license to an independent publisher, which permits that publisher to reprint a limited number of articles in its own newspaper distributed in Los Angeles (Kondo Decl. ¶ 12). Sankei also offers subscriptions to its newspaper over the Internet.

Plaintiffs' claims against Sankei arise out of the publication of two editorials and one news article about comfort women.[1] In November 2014, Sankei published an editorial calling for an end to references to the "coercive recruitment" of comfort women, which referred to statements of political leaders asserting that the comfort women had volunteered and that they were paid for their work. Editorial, *Opinion — Counterarguments to Remove the Disgrace of the "Coercive Recruitment"*, SANKEI SHIMBUN, Nov. 11, 2014. In April 2015, Sankei published a news article detailing a researcher's conclusions that the forcible taking of comfort women was a fiction. *Seizing Comfort Women by Force is Fiction. U.S. Journalist says "South*

---

[1] In their complaint, plaintiffs provided hyperlinks to web pages that displayed the allegedly defamatory articles. The articles appeared only in Japanese on those web pages. Plaintiffs have not provided an English translation of the articles. Sankei has provided an English translation (Fukuhara Decl., Exhs. 4–6). Plaintiffs do not dispute that the articles discussed comfort women only generally, without mentioning plaintiffs by name.

2

*Korea is Puppet of China." No Evidence in U.S. National Archives*, SANKEI NEWS, Apr. 20, 2015. In January 2015, Sankei published an editorial that called for the deletion of allegedly misleading descriptions of the coercive recruitment of comfort women from Japanese textbooks. Editorial, *Advocate — Correction of Misleading Descriptions is Matter-of-Course: Social Studies Textbooks*, SANKEI SHIMBUN, Jan. 18, 2015.

Plaintiffs allege that Sankei published these articles as a part of a conspiracy with the prime minister of Japan, defendant Shinzo Abe, to publish these allegedly defamatory statements. They also allege that Sankei's publications seventy years later aided and abetted the kidnapping of Korean women during the Second World War. Specifically, plaintiffs assert the following claims against Sankei: (1) aiding and abetting torture in violation of the Alien Torts Statute, (2) defamation, (3) intentional infliction of emotional distress, and (4) violation of the Racketeer Influenced and Corrupt Organization Act. Sankei now moves to dismiss all claims against it. This order follows full briefing and oral argument.[2]

**ANALYSIS**

Sankei argues that plaintiffs have not effected proper service of process and that it is not subject to personal jurisdiction in this forum. Additionally, Sankei argues that each of plaintiffs' claims against it suffer from substantive deficiencies. Accordingly, Sankei moves to dismiss all claims against it. This order finds that Sankei cannot be subject to personal jurisdiction in this forum.

1. **SERVICE OF PROCESS.**

Sankei contends that plaintiffs did not properly serve it with the summons and complaint in this action. Rule 4(h)(1)(B) requires that a corporation must be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment of by law to receive service of process . . . ." Sankei is a Japanese corporation. It has not appointed an agent to receive process on its behalf in the United States (Kondo Decl. ¶ 19).

---

[2] One defendant, Mitsui & Co. (U.S.A.), Inc., has already successfully moved to dismiss. Plaintiffs' motion for leave to amend is pending. Six other defendants have pending motions to dismiss, scheduled for hearings next month. Plaintiffs have not yet served the remaining twelve defendants.

3

Plaintiffs attempted to serve Sankei with the summons and complaint in the offices of Fujisankei Communications International, Inc., in Washington, D.C., Fujisankei is a subsidiary of Fuji Media Holdings, Inc., which holds a minority stake in Sankei. Counsel for plaintiffs, accompanied by a Korean television crew, handed the summons and an incomplete copy of the complaint to Nobuyuki Aoki, who is a reporter for Sankei's newspaper working as an affiliate of Fujisankei. Aoki is not an officer or agent of Sankei.

Plaintiffs contend that Scott Stewart, an assistant manager at Fujisankei came to assist Aoki when plaintiffs' counsel approached. Stewart is not employed by Sankei, nor is he an agent of Sankei, although his business card indicates that he has an affiliation with Sankei to denote his relationship to Sankei's reporters that work at Fujisankei (Kondo Supp. Decl. ¶ 12; Aoki Supp. Decl. ¶ 3).

At oral argument, counsel for Sankei indicated that the only way plaintiffs could effectuate proper service on Sankei would be through the Hague Convention, because none of its six United States-based employees is an officer or a managing agent. It would be troubling to conclude that an overseas company could send employees to work in the United States and yet be immune to service of process here. This prospect seems so unfair that this order will decline to rule on the service-of-process issue and will instead proceed to the personal jurisdiction challenge.

### 2. PERSONAL JURISDICTION.

An equally serious problem is lack of personal jurisdiction.

#### A. General Jurisdiction.

Plaintiffs contend that Sankei is subject to general jurisdiction in California. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___, 131 S. Ct. 2846, 2851 (2011). Sankei is a Japanese corporation with its principal place of business in Tokyo and major offices in Osaka. Sankei's

1 only direct contact with California is the presence of a single reporter based in Los Angeles.
2 Sankei is plainly not "at home" in California.

### B.     Specific Jurisdiction.

For claims arising under federal law, as here, an overseas defendant may be subject to personal jurisdiction in any state, if it is not subject to jurisdiction in any state's courts of general jurisdiction, and its contacts with the United States as a whole are sufficient to establish jurisdiction. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450 (9th Cir. 2007). All claims against Sankei arise out of the same conduct.[3] Additionally, because Sankei has contradicted the factual allegations regarding jurisdiction in the complaint, plaintiffs may not rest solely on the pleadings to establish personal jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).

Sankei's only direct activity in the United States is the news-gathering of six employees. Sankei does not advertise or sell its newspaper here, nor does it solicit advertising here. Sankei's news-gathering in the United States had no relationship to plaintiffs' claims. Sankei's content (which does give rise to plaintiffs' claims) reaches the United States, but only by way of independent third-party distributors. Thus, Sankei itself has not created any contact with California or with the United States as a whole that gives rise to plaintiffs claims (Kondo Decl. ¶¶ 8–10).

Our court of appeals has found personal jurisdiction lacking where the "sole contact" between the defendants and the forum state was the circulation of 156 copies of a libelous publication through independent news dealers. *Church of Scientology of California v. Adams*, 584 F.2d 893, 896 (9th Cir. 1978). On the other hand, our court of appeals has held that a newspaper is subject to personal jurisdiction based on the distribution of only thirteen copies of a defamatory article in California, if the defamatory materials targeted a plaintiff that lived in

---

[3] In their opposition to Sankei's motion to dismiss (but not in their complaint), plaintiffs assert that Sankei "actively participated in the commission of war crimes including [the] invasion of China and attack on Pearl Harbor by providing materials as well as political propaganda" (Pls.' Opp. at 13). Although such allegations would require a separate personal jurisdiction analysis, those claims would raise the same political-question and time-bar issues discussed in the order dismissing plaintiffs' claims against Mitsui & Co. (U.S.A.) failed (Dkt. No. 76). Accordingly, this order does not address plaintiffs' arguments in their brief regarding wartime conduct as if they had been properly pled.

5

California or where the primary impact of the defamatory story was felt in California. *Gordy v. Daily News, L.P.*, 95 F.3d 829, 834 (9th Cir. 1996).

Our plaintiffs — residents of South Korea — lack any relationship to the United States. The impact of the stories in question occurred primarily in Korea and Japan, not here. Accordingly, neither Sankei's aggregate contacts with the United States as a whole nor its contacts in California, sufficiently relate to plaintiffs' claims such that Sankei could be subject to personal jurisdiction here.

Plaintiffs argue that Sankei must be subject to specific jurisdiction in the United States because it offers subscriptions on the Internet. "Mere advertisement or solicitation for sale of goods and services on the Internet" is not sufficient to subject a party to personal jurisdiction. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). Rather, there must be "'something more' to indicate that the defendant purposefully (albeit electronically) directed [its] activity in a substantial way to the forum state." *Ibid.* Plaintiffs argue that Sankei offers its articles in English and thereby targets readers throughout the United States, but the only example it offers is an article in *The Japan Times*, which is a separate organization with no relationship to Sankei. The article in *The Japan Times* was *about* Sankei, not *by* Sankei. Sankei's articles are only available in Japanese (Kondo Supp. Decl. ¶¶ 5–7). Accordingly, plaintiffs have not alleged that Sankei has done "something more" than merely offering its articles on the Internet to warrant the application of personal jurisdiction in the United States.

Finally, plaintiffs cite a third-party website, Manta.com, which maintains a database of information about businesses throughout the United States, purportedly drawn from public records. Manta.com estimated that Sankei's California office generated fifty-seven thousand dollars in annual revenue and the Washington D.C. office generated between five hundred thousand and one million dollars.[4] The Manta.com profiles did not indicate a source for the revenue estimates, and plaintiffs offered no indication that Manta.com is a reliable source of revenue estimates.

---

[4] *Sankei Shimbun L.A. Bureau*, MANTA.COM, http://www.manta.com/c/mtmdkwx/sankei-shimbun-l-a-bureau (last visited Nov. 23, 2015); *Sankei Shimbun*, MANTA.COM, http://www.manta.com/c/mw28cq3/sankei-shimbun (last visited Nov. 23, 2015).

6

Although Manta.com is hearsay, the information therein would be usable to justify discovery (from Sankei) by plaintiffs to establish personal jurisdiction if it were shown that the revenue data would plausibly sustain personal jurisdiction. At oral argument, however, plaintiffs' counsel said he did not wish to undertake any discovery into personal jurisdiction issues. Consequently, Manta.com falls away as a consideration.

## CONCLUSION

Plaintiffs' claims against Sankei Shimbun, Co., Ltd., are hereby **DISMISSED** for lack of personal jurisdiction.

**IT IS SO ORDERED.**

Dated: November 24, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE