IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HE NAM YOU and KYUNG SOON KIM, for themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HIROHITO; NOBUSKE KISHI; NIPPON YUSEN KABUSHIKI KAISHA; NISSAN MOTOR CO., LTD.; TOYOTA MOTOR CORPORATION; HITACHI, LTD.; NIPPON STEEL & SUMITOMO METAL CORPORATION; MITSUI GROUP; OKAMOTO INDUSTRIES, INC.; and SANKEI SHIMBUN CO., LTD.,<br><br>Defendants. | No. C 15-03257 WHA<br><br>**ORDER DISMISSING ACTION** |

**INTRODUCTION**

In this putative class action for crimes against humanity during the Second World War and for defamation, a prior order granted one defendant's motion to dismiss for lack of personal jurisdiction. Plaintiffs were given leave to conduct jurisdictional discovery and both sides submitted supplemental briefs. For the reasons stated below and in the prior order, this order **AFFIRMS** the earlier order granting defendant's motion to dismiss. Additionally, because plaintiffs have failed to timely serve the remaining defendants, this order **DISMISSES** all claims against all remaining defendants.

**STATEMENT**

The details of this action have been set forth in prior orders and need not be set forth in full here (Dkt. Nos. 76, 122, 151, 164).  Briefly, plaintiffs He Nam You and Kyung Soon Kim are residents and citizens of the Republic of Korea.  They were abducted by the Japanese government during the Second World War, forced into servitude, and exploited as sex slaves for the benefit of Japanese soldiers at "comfort stations" in Japan.  The Japanese military forced over 200,000 Korean women to serve as sex slaves during the Second World War, few of whom survive today.  Plaintiffs seek to represent a class of the surviving comfort women.

Defendant Sankei Shimbun, Co., Ltd., is a Japanese corporation with its principal place of business in Tokyo and major offices in Osaka.  Sankei Shimbun publishes a daily newspaper in Japanese, which it distributes in Japan.  Plaintiffs claim that in November 2014, Sankei Shimbun published an article with allegedly defamatory statements about comfort women, and seek to pursue claims arising therefrom here in federal district court here in San Francisco.

Sankei maintains three news-gathering branches in the United States, in New York, Washington, D.C., and Los Angeles.  Those branches sublease office space from Fujisankei Communication International.  Sankei also utilizes FCI's services to handle the payment of salaries for its reporters in the United States.  Sankei's reporters in the United states are "seconded" to FCI, and have some support staff employed directly by FCI.  Sankei and FCI are separate legal entities.  FCI is owned by Fuji Media Holdings, a Japanese corporation that holds a minority stake in Sankei (Kondo Decl. ¶ 6; Aoki Decl. ¶ 3).

Sankei does not, itself, deliver physical newspapers to anyone in the United States.  Nineteen subscribers receive Sankei's newspaper through an independent courier, OCS, that imports the newspaper from Japan and distributes it here.  Sankei does not direct the independent company to deliver those copies (Kurosawa Dep. at 36–37, 50).

Sankei maintains a website written in Japanese (but not in English) available to all to read for free.  Sankei also owns an 80% ownership stake in Sankei Digital, which offers paid online subscriptions to Sankei's newspaper.  Approximately 88 people who subscribed via Sankei Digital paid from the United States.  Sankei Digital also licenses articles to an

independent third party, Rafu Shimpo, which independently selects which articles it publishes in its Los Angeles-based paper, with a focus on local stories of interest to the Japanese community in Los Angeles. Sankei does not directly generate any revenue from the United States (*id.* at 39, 51–52; Kondo Decl. ¶ 12).

A prior order granted Sankei's motion to dismiss for lack of personal jurisdiction (Dkt. No. 122). That order noted that plaintiffs had referred to a third-party website, Manta.com, which maintains a database of information about businesses in the United States. The Manta.com profile indicated that Sankei earned more than one million dollars in revenue from its three United States branches. Although the unverified Manta.com profile could not establish personal jurisdiction over Sankei, that order indicated it could be a basis to conduct jurisdictional discovery. Plaintiffs sought leave to conduct jurisdictional discovery regarding Sankei's presence in the United States, which leave was granted (Dkt. No. 153). This order follows the parties' submission of supplemental briefs detailing the results of plaintiffs' jurisdictional discovery, which included the production of documents and a Rule 30(b)(6) deposition (Dkt. Nos. 173, 176).

**ANALYSIS**

1. **SANKEI.**

Plaintiffs contend that jurisdictional discovery revealed facts that support the exercise of personal jurisdiction over Sankei by way of either general or specific jurisdiction. This order addresses the new facts revealed through discovery.

**A. General Jurisdiction.**

Plaintiffs primarily contend that Sankei is subject to general jurisdiction in California. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Sankei is a Japanese corporation with its principal place of business in Tokyo and major offices in Osaka; its only direct contact with California is the presence of a news bureau in Los Angeles that

generates no revenue. The order granting Sankei's motion to dismiss held, on that basis, that Sankei was plainly not "at home" in California.

Plaintiffs' jurisdictional discovery did not contradict the facts on which that holding was based. Sankei did not directly generate any revenue in the United States. Any sales of Sankei's content in the United States occurred either through the independent courier, OCS, or Sankei Digital, in which Sankei holds an 80% stake. Plaintiffs entirely abandoned any investigation into the profile of Sankei on Manta.com, which formed the sole basis for permitting jurisdictional discovery. Sankei's only direct presence in the United States was its newsgathering bureaus. That is an insufficient basis to find that Sankei is "essentially at home" in the United States.

Plaintiffs advance a new theory of general jurisdiction — that Sankei is a subsidiary of a media conglomerate called Fujisankei Communications Group and that the latter's contacts, which include those of a separate subsidiary, Fujisankei Communications International, can be attributed to Sankei for the purpose of establishing general jurisdiction.

*First*, plaintiffs submit no admissible evidence regarding the existence of "Fujisankei Communications Group." Plaintiffs cite an article on Wikipedia.com that states "FCI is a US company owned by a media conglomerate called Fujisankei Communications Group which owns Sankei as well." Contrary to the article, FCI's parent company is Fuji Media Holdings, Inc., which owns only a 40% stake in Sankei (Kondo Dep. ¶ 6; Aoki Dep. ¶ 3; Kirosawa Dep. at 18).

*Second*, the only basis for imputing general jurisdiction from one affiliate entity to another is to determine whether the entities are "alter egos." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 915 (2016). Entities are "alter egos" if (1) "there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exists" and (2) "failure to disregard [their separate identities would result in fraud or injustice." *Id.* at 1073 (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).

To succeed, plaintiffs would have to show that *all three* of FCI, Fuji Media, and Sankei, are alter egos of each other. Plaintiffs fall far short. The "'unity of interest' prong of the test

4

requires 'a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Ibid.* "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Ibid.*

Here, plaintiffs fall far short of establishing a unity of interest among FCI, Fuji Media, and Sankei. Fuji Media holds only a minority interest in Sankei, and there is no evidence that exerts any control over Sankei, much less such pervasive control that Sankei is merely an instrumentality of Fuji Media. Plaintiffs' best points are that Sankei leases office space from FCI, and that Sankei outsources payment of its United States-based reporters to FCI, and that Sankei and FCI share some local support staff. This is simply insufficient evidence of the requisite level of control to support the exercise of alter ego jurisdiction.

### B. Specific Jurisdiction.

For claims arising under federal law, as here, an overseas defendant may be subject to personal jurisdiction in any state if it is not subject to jurisdiction in any state's courts of general jurisdiction and its contacts with the United States as a whole are sufficient to establish specific jurisdiction. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450 (9th Cir. 2007). All claims against Sankei arise out of the same conduct — the publication of allegedly defamatory articles. Plaintiffs do not argue that Sankei's newsgathering in the United States had any relationship to the claims herein.

As before, plaintiffs have failed to show that Sankei's contacts with the United States had any relationship to the claims asserted herein. The only new evidence on this point is that 88 people subscribed to Sankei's magazine via Sankei Digital and paid from the United States. As stated in the prior order, our court of appeals has found personal jurisdiction lacking where the defendants' "sole contact" with the forum state related to the claims was the circulation of 156 copies of a libelous publication to California subscribers and independent news dealers. *Church of Scientology of California v. Adams*, 584 F.2d 893, 896 (9th Cir. 1978). On the other hand, our court of appeals has held that a newspaper is subject to personal jurisdiction based on the distribution of only thirteen copies of a defamatory article in California, if the defamatory materials targeted a plaintiff that lived in California or where the primary impact of the

defamatory story was felt in California. *Gordy v. Daily News, L.P.*, 95 F.3d 829, 834 (9th Cir. 1996).

The new evidence that a partially-owned subsidiary of Sankei sold online subscriptions to Sankei's newspaper to 88 individuals that paid from the United States is insufficient to distinguish our case from *Church of Scientology*. There is no evidence that the article in question was ever seen by any readers in the United States, but even assuming every subscriber saw the article, the circulation of 107 copies of the publication, directed entirely by entities other than our defendant, still falls short of *Church of Scientology* on every dimension. There is no evidence that Sankei, through its content, its advertising, or its own distribution efforts ever targeted readers in the United States. Accordingly, Sankei's aggregate contacts in the United States cannot establish specific personal jurisdiction.

**2.    OTHER DEFENDANTS.**

This case was filed in July 2015. Now, almost a year later, plaintiffs have made no effort to serve the remaining defendants (two of whom are deceased individuals). Accordingly, all claims against defendants that have not yet been served are hereby **DISMISSED** for lack of prosecution.

\*              \*              \*

The Court acknowledges that our plaintiffs have suffered regrettable and horrific acts and has patiently allowed them numerous opportunities to overcome the bars to their claims. The law simply does not permit this Court to serve as a forum for the adjudication of their claims.

**CONCLUSION**

For the reasons stated above, the order granting Sankei's motion to dismiss is **GRANTED**, and all remaining claims are **DISMISSED**, for lack of prosecution. A final judgment will follow. The clerk shall please **CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: June 21, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE